SOUTHERN GUARANTY INSURANCE COMPANY, Plaintiff,

v.

Dave BERRY, Ralph Catino, Billy Talarico, Dennis Garris, and Travelers Insurance Company, Defendants.

Civ. A. No. C83–046A.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 15, 1983.

W. Wray Eckl, Drew, Eckl & Farnham, Atlanta, Ga., for plaintiff.

Robert L. Herman, Atlanta, Ga., for Ralph Catino.

J. Lansing Kimmey, Northcutt, Edwards, Germano, Nix & Kimmey, Atlanta, Ga., for Billy Talarico and Dennis Garris.

R. Chris Irwin, Oliver B. Dickins, Jr. & Assoc., Atlanta, Ga., for Travelers Ins. Co.

## ORDER

ROBERT H. HALL, District Judge.

In this declaratory judgment action, the plaintiff, Southern Guaranty Insurance Company ("SGIC") requests this court to determine the extent to which it owes Personal Injury Protection ("PIP") benefits to persons injured in an automobile accident occurring on December 13, 1982. On that day, defendant Ralph Catino was using a 1980 Chevrolet Pickup Truck owned by defendant Dave Berry and insured by SGIC. At approximately 12:10 a.m., Catino and defendant Dennis Garris tried unsuccessfully to start the vehicle, which was parked next to the curb in front of Catino's apartment building. Catino then borrowed some jumper cables from his neighbor, defendant Billy Talarico. At Catino's request, Talarico pulled his girlfriend's car up to the pickup truck and attached the jumper cables. At that moment, Garris and Talarico were standing between the pickup truck and Talarico's girlfriend's car, while Catino was apparently standing on a trailer attached to the back of the pickup truck. Suddenly, the pickup truck was hit from the rear by a 1973 Opel Manta, owned by Kevin Gwynn, driven by Pat Jones, and insured by defendant Travelers Insurance Company ("Travelers"). The force of the impact pinned Talarico and Garris between the pickup truck and Talarico's girlfriend's car, resulting in personal injury to both men.[1] Both SGIC and Travelers have filed motions for summary judgment which raise the sole issue presently before this court: whether, under Georgia "no-fault" automobile insurance law, Talarico and Garris are entitled to Personal Injury Protection benefits from Travelers as the insurer of the moving vehicle that precipitated this accident, or from SGIC as the insurer of the parked vehicle which was physically propelled into Talarico and Garris after being hit by the moving vehicle.

The Georgia Motor Vehicle Accident Reparations Act, O.G.C.A. 33–34–7, provides that

(a) The insurer of a motor vehicle with respect to which security is required by Code Section 33–34–4 shall pay basic no-fault benefits without regard to fault for economic loss resulting from

... (3) Accidental bodily injury sustained by any other person as a result of being struck by the owner's motor vehicle while a pedestrian in this state.

The Georgia Code also defines "insured" under a "no-fault" automobile insurance policy to include "any pedestrian struck by the insured vehicle." O.G.C.A. § 33–34–2(5). In combination, these provisions clearly indicate a legislative intent to allow pedestrians involved in automobile accidents to recover personal injury protection benefits from the insurers of the automobiles involved. The parties in this case do not seem to dispute the characterization of Talarico and Garris as "pedestrians," since neither man was "occupying" a motor vehicle at the time of the accident. See, O.G.C.A. § 33–34–2(11). Rather, the controversy concerns whether Talarico and Garris were "struck by" the parked SGIC-insured vehicle or the moving Travelers-insured vehicle. This is, of course, the critical inquiry at this point, since an insurer's statutory

---

1. While it is not altogether clear to this court where Ralph Catino was standing at the time of the collision, and in what manner his injuries were sustained, SGIC has agreed to pay full PIP benefits to Catino, based on its conclusion that as an "occupant" of the pickup truck at the time of the accident, Catino is entitled to collect these benefits solely from SGIC pursuant to O.G.C.A. § 33–34–7(a)(2). The remaining discussion will thus focus only on the obligations of the two insurance companies involved in this case vis-a-vis defendants Talarico and Garris.

obligation to pay "no-fault" benefits does not arise until it is established that the insured vehicle "struck" the injured persons.

Unfortunately, no Georgia appellate court has ever interpreted the phrase "struck by a motor vehicle" as it appears in the Georgia "no-fault" insurance provisions. And, while the term has been construed by many courts in other jurisdictions, this court has found only one case in which the critical language was embodied in a "no-fault" statutory provision, as it is in the case at bar, rather than in an automobile insurance policy. *See, e.g., Royal Indemnity Co. v. Government Employees Insurance Co.,* 307 So.2d 458 (Fla.App.1975). The distinction is an important one, since the general presumption that ambiguities in insurance contracts are to be resolved against the insurer/drafter does not necessarily apply in situations involving statutory construction rather than contractual interpretation. Nonetheless, most courts that have considered the phrase "struck by an automobile" have done so in light of what they deem to be the plain and logical meaning of the words. Thus, to the extent that the meaning of this phrase or the legislative intent with respect to its use is unclear, these cases are useful to this court in the instant inquiry.

The crux of the instant dispute is, of course, whether the phrase "struck by a motor vehicle" contemplates or requires direct physical contact between the alleged offending vehicle and the bodies of the persons claiming PIP benefits. If such direct physical contact is a prerequisite to coverage in this case, then only SGIC, as the insurer of the parked car against which Talarico and Garris were pinned, is responsible for the payment of accidental injury benefits. SGIC, of course, admits that its insured vehicle did in fact come in contact with the bodies of Talarico and Garris, but argues that but for the fact that the parked vehicle was initially hit by the moving vehicle and then propelled into the bodies of Talarico and Garris, the parked car would never have made contact with these claim-ants at all. Travelers does not seem to disagree with the contention that its insured vehicle was the "but-for cause" of this accident. Rather, Travelers asserts that issues of causation are irrelevant in the context of a statutory scheme in which "fault" is immaterial, and that "struck by an automobile" must be narrowly construed to cover only those situations in which there exists direct physical contact between the claimants and the offending vehicle.

Although there is some authority to the contrary, the majority rule appears to be that one can be "struck by an automobile" without actually coming in contact with the automobile itself. *See, e.g., Royal Indemnity Co. v. GEICO, supra; DeBerry v. American Motorists Insurance Company,* 33 N.C. App. 639, 236 S.E.2d 380 (N.C.App.1977); *Bates v. United Security Insurance Co.,* 163 N.W.2d 390 (Iowa 1968); *Annot.,* 33 A.L. R.3rd 962 (1970) and cases cited therein. This court agrees. In ordinary parlance, the word "struck" is frequently used to denote a movement or a force causing or resulting in a physical impact. The "striking" force can be either the force which most immediately comes in contact with the object struck, or it can be the force setting in motion a chain of events leading up to the striking of an object. Were this court to accept Travelers' argument that the moving car cannot have "struck" Talarico and Garris because it never physically touched them, this court would be straining the meaning of these words far beyond their ordinary and logical usage in order to achieve a wholly impractical and inequitable result. This court finds compelling the observation, made by the Florida Court of Appeals in a case strikingly similar to the one at bar, that "if the [parked] vehicle, instead of another car, were a tree, or a stone, or a wall, or some other object which the [moving] car caused to strike the plaintiff, we think it is clear" that the moving car's insurer would be obligated to pay PIP benefits to any injured persons pursuant to Florida's "no-fault" automobile insurance statute. *Royal Indemnity, supra,* 307 So.2d

at 460.[2] This court thus holds that the moving car insured by Travelers "struck" Talarico and Garris, and that Travelers is therefore required to pay PIP benefits to these defendants pursuant to O.G.C.A. § 33–34–7(a)(3).

This is not, however, the end of the inquiry. This court's determination that the term "struck by" includes the vehicle which set in motion the chain of events leading to the accident does not exclude as a "striking vehicle" the parked car that actually physically came in contact with the claimants' bodies. There can, of course, be multiple causes of an event, and accidental bodily injury within the meaning of the Georgia "no-fault" statute can "result" from a combination of many forces, even though the statutory "no-fault" scheme does bypass the apportionment of *blame* as between multiple causes of a single event. It is undisputed that the parked car physically "struck" the claimants' bodies; that it would not have done so but for the collision precipitated by the moving car is irrelevant to the construction of the language of the "no-fault" statute. This court thus finds that both the moving car and the parked car "struck" the claimants, and therefore both SGIC and Travelers are obligated to pay PIP benefits to Talarico and Garris pursuant to O.G.C.A. § 33–34–7(a)(3).[3]

In light of the foregoing analysis, plaintiff SGIC's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, and defendant Travelers' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

---

**2.** Travelers argues that *Royal Indemnity* is distinguishable from the instant case in that the Florida "no-fault" statute involved in that case predicated an insurer's payment of PIP benefits upon an "injury ... *caused* by *physical contact* with ... [a] motor vehicle." (emphasis added) Travelers contends that the Georgia "no-fault" statute makes no reference to "cause," and that it is therefore improper for this court to consider the fact that the moving vehicle may have been the proximate cause of this accident. This argument is illogical and unpersuasive, however, since, although *fault* is irrelevant under no-fault law, nonetheless "the fundamental prerequisite [to an insurer's obligation to make payments under Georgia "no-fault" law is] that the accident, whether the fault of the plaintiff or another, must be the *cause* of the disability," *Smith v. State Farm Mutual Automobile Insurance Company,* 152 Ga.App. 825, 826, 264 S.E.2d 296 (1979) (emphasis added). It is wholly possible that a person or a force can *cause* an accident and yet not be at *fault*. The Georgia no-fault statute requires benefits to be paid by insurers for accidental bodily injury "resulting from" certain types of encounters between persons and automobiles. Surely Travelers would agree that the words "resulting from" were intended to preserve the requirement that there be a causal relationship between an insured automobile and a person's injuries before that automobile's insurer will be obligated to pay PIP benefits for those injuries. Travelers' suggestion that this court's examination of causal forces in this case would undermine the "no-fault" statute's goal of eliminating wasteful litigation concerning fault is simply untenable.

Moreover, given that the Florida statute, unlike the Georgia statute, specifically requires "physical contact" between the allegedly offending vehicle and the injured claimant, the Florida court's decision holding the moving car's insurer solely responsible for the payment of PIP benefits when only the parked car actually came in physical contact with the claimant provides especially strong support for this court's ruling in the instant case. This court is convinced by the appropriateness of the *Royal Indemnity* court's characterization of the parked car as a mere extension of the moving car for purposes of meeting the "physical contact" requirement of the Florida statute, and finds, by analogy, that the moving car in this case "struck" Talarico and Garris once it pushed the parked car into their bodies.

**3.** The actual dollar amount which each insurer must pay to each claimant will depend upon the relevant specific provisions of the insurance contracts covering the two vehicles involved in this case, within the limitations set forth in O.G.C.A. § 33–34–4(c).